UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HENRY RICHARDS                                              CIVIL ACTION

v.                                                          NO. 09-7236

TRANSOCEAN INTERNATIONAL, INC., ET AL.                      SECTION "F"

ORDER AND REASONS

Before the Court is Transocean Offshore Deepwater Drilling, Inc.'s motion for partial summary judgment under the borrowed servant doctrine. For the reasons that follow, the motion is GRANTED.

Background

This is a personal injury case in which Henry Richards claims he was injured on June 30, 2009 while working aboard the TRANSOCEAN MARIANAS.

Henry Richards worked for Oceanlife Limited, LLC, and was assigned to a catering crew aboard the TRANSOCEAN MARIANAS by ART Catering, Inc.; ART Catering had contracted with Transocean Offshore Deepwater Drilling, Inc. to provide catering, housekeeping, pest control, and related services on Transocean's offshore rigs, including the TRANSOCEAN MARIANAS. At around 8:40 p.m. on June 30, 2009, Richards says he was taking trash to a trash compactor and a slop bucket of food to the gulf gulp food grinder when he slipped on the floor and injured his back by twisting to keep from falling onto the deck in the hall near the first floor

1

change room.  On November 10, 2009, Richards sued Transocean for Transocean's negligence and the unseaworthiness of the semi-submersible drilling vessel, the TRANSOCEAN MARIANAS.  On August 11, 2010 Louisiana Workers' Compensation Corporation intervened in the suit, claiming that it was the worker's compensation insurer for Oceanlife Limited LLC, Richards' employer, and as such has paid compensation benefits and medical expenses to which it seeks to recover, depending on the outcome of this litigation.  On September 1, 2011 Richards filed a second amended complaint, adding ART Catering as a defendant; Richards seeks to recover for ART Catering's and Transocean's Jones Act negligence and, alternatively, asserts a claim against ART Catering and Transocean pursuant to under 33 U.S.C. § 905(b) for failure to protect Richards from the leaking equipment and collection of water, as well as for unseaworthiness of the TRANSOCEAN MARIANAS.

Transocean now seeks partial summary judgment, requesting dismissal of the plaintiff's Jones Act claim against it on the ground that Richards was not Transocean's borrowed employee.

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

   The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

Transocean seeks partial summary judgment dismissing the plaintiff's claim that he was Transocean's Jones Act employee.[1] Transocean contends that there is no evidence to support the allegation that Richards was a borrowed servant of Transocean. Richards opposes the motion, asserting that Transocean "is simply attempting to get the Jones Act claim dismissed through the back door and end Mr. Richards' rights and claims under the Jones Act."

A.

Clearly only seamen can proceed under the Jones Act. Transocean does not dispute that Richards was a seaman but, rather, contends that Richards was not *its* seaman (suggesting instead, perhaps, that he was ART Catering's seaman). Thus, in order to foreclose Jones Act recovery against it, Transocean seeks to dispel any claim by Richards that he was Transocean's borrowed seaman, or borrowed servant.

To determine whether a plaintiff is a company's borrowed seaman, courts consider nine factors:

1. Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
2. Whose work is being performed?
3. Was there an agreement, understanding, or meeting

---

[1] Transocean contends that it does not, at this time, seek to dismiss any general maritime claims that Richards has brought against it. Rather, by this motion, Transocean only suggests that Richards has no basis to proceed under the Jones Act against Transocean.

4

>    of the minds between the original and borrowing employer?
> 4. Did the employee acquiesce in the new work situation?
> 5. Did the original employer terminate his relationship with the employee?
> 6. Who furnished tools and place for performance?
> 7. Was the new employment over a considerable length of time?
> 8. Who had the right to discharge the employee?
> 9. Who had the obligation to discharge the employee?

Melancon v. Amoco Prod. Co., 834 F.2d 1238, 1244 (5th Cir. 1988). While "no one of these factors, or any combination of them, is decisive, and no fixed test is used to determine the existence of a borrowed- servant relationship," Ruiz v. Shell Oil Co., 413 F.2d 310, 312-13 (5th Cir.1969), the fundamental question is "whether someone has the power to control and direct another person in the performance of his work." Hebron v. Union Oil Co. of California, 634 F.2d 245, 247 (5th Cir.1981).

*B.*

Transocean contends that application of these factors compels the conclusion that Richards was not its borrowed servant.  The Court agrees.  Transocean has submitted record evidence that supports a finding that Richards was not its borrowed employee.  Richards, on the other hand, has failed to submit any evidence to suggest even a disputed issue of fact regarding whether he was, in fact, Transocean's borrowed employee.

First, the Court considers who had control over the Richards and the work he was performing.  It is undisputed for the purposes

of this motion that Richards was employed by Oceanlife and ART Catering. Transocean submits that ART Catering had control over Richards and his work. In support, Transocean points to the Transocean-ART Catering contract, which provided that ART Catering had supervisory authority over employees like Richards, and also provided that ART Catering was in charge of staffing and adhering to working schedules and hours. Pursuant to this contract, ART Catering agreed to "at all times be responsible for the conduct of its employees and will bear all the employment costs associated with the employment of such employees [including wages and salaries[], medical expenses, termination...compensation, vacation pay, sick leave, bonuses, overtime pay, holiday pay, personnel related taxes,...."

    Richards suggests that "[u]nquestionably, the captain of the TRANSOCEAN MARIANAS is the person that had ultimate control over Mr. Richards and the work he was performing." While Richards offers no support for this assertion, the contract makes clear that Transocean could require ART Catering to "immediately remove" any of ART Catering's employees if Transocean believed that the employee misconducted himself or is "incompetent" or "negligent." This does not undermine the contract's other provisions that support Transocean's argument that ART Catering was responsible for its employees; indeed, even the replacement of personnel section of the contract requires ART Catering to select the replacement, whom

ART Catering must then schedule, supervise, and be responsible for the replacement's employment costs. Moreover, Transocean's evidence goes beyond the contract: Transocean submits testimony from witnesses, including Richards himself, as well as an affidavit from ART Catering's Human Resources Director, all of whom suggest that ART Catering exercised control over the catering crew.[2] In light of the control exercised by ART Catering over its employees, application of this control factor supports Transocean's argument that Richards was not Transocean's borrowed servant.

Second, the Court considers whose work was being performed. Transocean submits, and this Court agrees, that this factor is neutral. Catering work is incidental to the rig's operations and the actual performance of that work is the fundamental basis of ART Catering's business.

Third, the Court considers the contract between Transocean and

---

[2] Richards, for example, testified that he considered his "boss on the rig" to be the "camp boss", an ART Catering employee; another employee of Ocean Life who worked for ART Catering stated that he performed cleaning services on a Transocean rig, that the boss on the rig was the camp boss, that the ART Catering camp boss would instruct what to clean and when to clean it, and that he never interacted with the crew members from the rig or the platform.
   ART Catering's Human Resources Director states that ART Catering's employees are employed by ART and receive a paycheck from ART; ART's employees submit their timesheets to ART, are assigned specific tasks from ART, and are hired and fired by ART; ART conducts performance evaluations and is in charge of promotions of its employees; ART employees are instructed to raise any safety or other work-related issue with an ART supervisor, then the supervisor will bring the issue to Transocean's attention.

ART Catering.  As this Court has already found, Transocean has demonstrated that there was an understanding between ART Catering and Transocean that ART Catering's employees (including its borrowed employees), were ART Catering's own employees.  This is confirmed by the contract and is supported by the statements made by ART Catering's Human Resources Director.  This factor tips against a finding of borrowed employee status.

Transocean contends that the fourth factor has no bearing on the analysis; Richards appears to agree when he states that he "was doing the same employment that he had been doing onboard vessels and cruise ships for more than 15 years."  Accordingly, the Court disregards this factor.

Fifth, the Court considers whether the original employer terminated the employment relationship with Richards.  The record evidence suggests, and Richards does not dispute, that Richards was an employee of Oceanlife and a borrowed employee of ART Catering. The record further suggests that ART Catering selected Richards as an employee assigned to work on the TRANSOCEAN MARIANAS, and continued to control the details of his work assignments.  There is no evidence suggesting that Richards' employment status changed, or that ART Catering relinquished its responsibility over him.  This factor weighs against a finding of borrowed employee status.

Sixth, the Court considers who provided the tools and place for performance of the work.  It is undisputed that Richards worked

on Transocean's rig. However, Transocean points out that the contract provided that ART Catering would provide portable and other equipment, and contains a list of equipment and supplies to be supplied by each party. This factor is neutral.

Seventh, the Court considers whether the alleged borrowed employment was performed over a considerable length of time, as opposed to sporadic. Neither side points the Court to any evidence that might assist in making a finding on this factor. Accordingly, the Court disregards it.

Eighth, the Court considers who had the right to discharge or terminate Richards' employment. Although Transocean maintains that ART Catering had the right to terminate Richards' employment, and this is supported by the record, the Court notes, as it did previously, that Transocean also retained a right to require ART Catering to remove certain employees from the rig. Although Transocean did not have the right to terminate plaintiff's employment with ART Catering, but had the right to terminate Richards arrangement or assignment to Transocean, this arrangement actually supports a finding of borrowed servant status. See Brown v. Union Oil Co. of Calif., 984 F.2d 674, 679 (5th Cir. 1993)(citations omitted).

Ninth and finally, the Court considers who had the obligation to pay Richards. Richards testified that he was paid by Oceanlife but that he was aware that the money to pay him came from ART

Catering. In any event, there is no dispute here that the contract between Transocean and ART Catering required ART Catering furnish and prepare time sheets and that the contract also provided that ART Catering employees would be paid by ART Catering. This final factor weighs against a finding that Richards was Transocean's borrowed servant.

In sum, the balance of the factors, including the most fundamental factor in the analysis -- the level of control and supervision exercised over Richards by ART Catering while he was performing his duties on Transocean's rig -- supports a finding that Transocean did not exercise the requisite control over Richards sufficient to support a Jones Act claim based on borrowed employee status.[3]

Accordingly, the defendant's motion for partial summary judgment on borrowed servant issue is GRANTED. Only the plaintiff's Jones Act claim against Transocean is dismissed.

New Orleans, Louisiana, September 20, 2011

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[3] Richards offers no evidence in support of his claim that Transocean was his borrowed employer. As the non-moving party, he must do more than simply deny the allegations raised by Transocean in order to defeat a supported motion for summary judgment. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Indeed, he is required to come forward with competent evidence to buttress his claims. Id. He has not.